**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | |
|---|---|
| NICHOLAS MARTIN and DAVID MACK on behalf of themselves and all others similarly situated )<br>)<br>)<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>LEADING EDGE RECOVERY SOLUTIONS, )<br>LLC and CAPITAL ONE BANK (USA) N.A., )<br>)<br>Defendants. | 11-cv-5886<br><br>Judge Lefkow<br><br>Magistrate Kim |

**MEMORANDUM OF LAW IN SUPPORT OF COMBINED FRCP 12(b)(1) and 12(b)(6)
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Defendant, LEADING EDGE RECOVERY SOLUTIONS, LLC ("Leading Edge"), submits the following as its Memorandum of Law in Support of its Combined FRCP 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiffs' Second Amended Complaint:

**I.    Introduction**

Defendant LEADING EDGE RECOVERY SOLUTIONS, LLC ("Leading Edge") is a debt collection agency located in Chicago. Second Amended Complaint ("SAC" ¶ 6) (Exhibit A). Plaintiffs NICHOLAS MARTIN and DAVID MACK allege that The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") "prohibits using telephone equipment that has the 'capacity to dial without human intervention . . .' to call cellular telephones in attempts to collect debts, unless 'the [cellular] number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed.'" SAC ¶ 2 (citation omitted). Plaintiffs generally claim that Leading Edge violated the TCPA by (a) dialing their cell phones without their consent and (b) using prohibited telephone equipment to place the calls. *See, e.g.,* SAC ¶¶ 8-11, 13-16. Plaintiffs' TCPA claim has been brought as a class action based

upon Plaintiff's claim that "Leading Edge called more than 5,000 Illinois, Indiana and Wisconsin cell phone numbers during 2010" in violation of the TCPA. SAC ¶ 28.

Plaintiff Martin also alleges that Leading Edge violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"). Plaintiff claims that Leading Edge violated §§ 1692e and 1692f of the FDCPA by lying to him "during a telephone conversation . . . when it told [him] that his relative (the alleged debtor) had provided [him] and his telephone number as a 'contact person' with respect to an alleged debt. SAC ¶ 38. Plaintiff Martin also alleges that Leading Edge's calls to him violated §§ 1692d 1692e and 1692f because Leading Edge "had no legitimate reason to call plaintiff . . . [because] it had location information for the true debtor." SAC ¶ 39.

The Second Amended Complaint should be dismissed because Plaintiffs have failed to satisfy the threshold element of Article III standing. With regard to the TCPA claims in Count I, Plaintiffs lack standing because they have failed to allege that they suffered any actual damages as a result of *any call* placed to their cellular phones. Similarly, with regard to Plaintiff Martin's FDCPA claim, he has failed to point to any actual damages that he suffered as a result of being called by Leading Edge.

Alternatively, Plaintiff's TCPA claim should dismissed pursuant to FRCP 12(b)(6) because Plaintiff has failed to plead an actionable claim. First, Plaintiffs have failed to allege that they were charged for the call in question. Second, Plaintiff has not adequately pled that they were called via a prohibited "automatic telephone dialing system." Mr. Martin's FDCPA claims should also be dismissed because Plaintiff's conclusory allegations fail to state actual or plausible violations of §§ 1692d, 1692e and 1692f.

**II.     Argument**

    **A.     Plaintiffs Have Failed to Satisfy Article III Standing**

The TCPA provides that an individual can "recover for *actual monetary loss* from such a violation, *or to receive $500 in damages for each such violation*, whichever is greater . . . ." §227(b)(3)(B) (Emphasis supplied). laintiffs do not allege to have suffered any actual monetary damages in relation to their TCPA claims such phone charges in excess of their monthly charges. Rather, SAC simply seeks statutory damages:

> WHEREFORE, plaintiff requests that the Court enter judgment in favor of himself and the class and against defendant that provides the following relief:
>
> a. Statutory damages of $500 per violation, and up to $1,500 per violation if proven to be willful;
>
> * * *

SAC, 7.  Similarly, Plaintiff Martin's FDCPA claim in Count II does not identify any actual damages suffered in relation to calls placed by Leading Edge.  Notably, he does not allege that the calls caused him to suffer emotional distress.  Accordingly, Plaintiffs' TCPA claims and Plaintiff Martin's FDCPA claims should be dismissed because they fail to satisfy Article III standing.

Standing is "'an essential and unchanging part of the case-or-controversy requirement of Article III' of the Constitution." *Perry v. Village of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999).  The "core component" of standing is "derived directly from the Constitution." *Allen v. Wright,* 468 U.S. 737, 751 (1984). Article III standing requires an actual injury in fact. *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992); *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83 (1998).  Injury in fact is part of the "irreducible constitutional minimum of standing." *Lujan,* 504 U.S. at 560.   "[T]he most important" way in which this Court has enforced Article

Ill's "fundamental limits on federal judicial power in our system of government" is the "require[ment] [that] a litigant … have 'standing' to invoke the power of a federal court." *Allen,* 468 U.S. at 750.

Congress does not have the power to eliminate Article III's standing requirements. "[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers v. Earth Island Inst.,* 129 S. Ct. 1142, 1151 (2009). *See also Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) ("In no event, however, may Congress abrogate the Art. III minima: A plaintiff must always have suffered a distinct and palpable injury to himself . . . that is likely to be redressed if the requested relief is granted." ); *Raines v. Byrd,* 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."); *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 487 n.24 (1982) ("Neither the Administrative Procedure Act, nor any other congressional enactment, can lower the threshold requirements of standing under Art. III."). *See also, Lujan,* 504 U.S. at 580 (holding that the "outer limit to the power of Congress to confer rights of action is a direct and necessary consequence of the case and controversy limitations found in Article III.").

On numerous occasions the Supreme Court has rejected attempt by Congress to establish causes of action where no injuries are suffered. For example, in *Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982), the Court found that Article III imposed an independent injury-in-fact requirement, and ultimately concluded that the plaintiff had demonstrated "specific injury" and therefore satisfied Article III. *Id.* at 373-74. *In Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83 (1998), the Supreme Court held that the plaintiff lacked an injury in

fact and could not proceed with its suit notwithstanding the fact that Congress enacted the Emergency Planning and Community Right-To-Know Act of 1986 which authorized suit by "any person" against the owner of a hazardous waste facility that failed to comply with the statute. 523 U.S. at 104-09. Similarly, in *Lujan*, the Court held that an actual injury was not pled with regard to the Endangered Species Act of 1973 which contained a "citizen suit" provision authorizing "any person" to "commence a civil suit on his own behalf" against the government. 504 U.S. at 571-73.

In *Gollust v. Mendell,* 501 U.S. 115, 125 (1991) the Court held that plaintiffs were required to "maintain some continuing financial stake in the litigation" in order to maintain an action under § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b). In reasoning that Article III requires a plaintiff to " 'allege a distinct and palpable injury to himself" to establish standing, the Court not only reaffirmed that Article III places a limit on Congress's ability to create standing by authorizing suit, but it also made clear that the limitation applies in suits under statutes that provide tort-like causes of action in situations involving individual pecuniary harm. *Id*. at 126. *See also, Warth v. Seldin*, 422 U.S. 490, 508 (1975) (emphasizing the need for a plaintiff to "allege specific, concrete facts demonstrating that the challenged practices harm *him."*). More recently, in *Sprint Communications Co. v. APCC Services, Inc.,* 554 U.S. 269 (2008), the respondents sued pursuant to the private right of action under the Communications Act of 1934. While the Court did not question that the plaintiffs had been *assigned* causes of action, it required them to establish standing under Article III. *Id.* at 273-74.

The Supreme Court has "always insisted on strict compliance with th[e] jurisdictional standing requirement." *Raines,* 521 U.S. at 819. "In an era of frequent litigation, class actions, sweeping injunctions with prospective effect, and continuing jurisdiction to enforce judicial

5

remedies, courts must be more careful to insist on the formal rules of standing, not less so." *Arizona Christian Sch. Tuition Org. v. Winn,* 131 S. Ct. 1436, 1449 (2011). To recognize such fictitious injuries would effectively eliminate the "hard floor" requirement that Article III imposes and would allow Congress to evade the separation-of-powers limits that Article III protects. *Summers,* 129 S. Ct. at 1151; *cf. City of Boerne v. Flores,* 521 U.S. 507, 536 (1997).

The class-action context of this case underscores the importance of requiring the allegation (and, eventually, proof) of a well-defined injury in fact. Plaintiffs have alleged no "concrete or de facto injury" in relation to their TCPA claims. *Lujan,* 504 U.S. at 578. In absence of an injury in fact, this proposed class action could result in tens of million of dollars in damages, without the existence of *any* individualized injury to either Plaintiff. As the Supreme Court has recently reiterated, suits which threaten vast liability, have the *in terrorem* effect forcing settlement of even unmeritorious suits. *Cf. AT&T Mobility LLC v. Conception,* 131 S. Ct. 1740, 1752 (2011) ("[W]hen damages allegedly owed to tens of thousands of potential claimants are aggregated and decided at once, the risk of an error will often become unacceptable."). While it is the role of the judiciary to provide a forum to "obtain[] compensation for, or [to] prevent[], the violation of a legally protected right" (*Vermont Agency*, 529 U.S. at 772-73), where, as here, plaintiff has suffered no actual injury, plaintiff may not invoke the jurisdiction of the federal courts. *See also*, *Doe v. Chao,* 540 U.S. 614, 624-25 (2004) (only a plaintiff "subjected to an adverse effect has injury enough to open the courthouse door"). Class actions *may* serve a legitimate function to the extent that they enable recovery on behalf of a broad class whose members have each suffered an actual but small injury. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617 (1997).

While the Seventh Circuit has previously held that individuals suing under the FDCPA

6

need not incur actual damages to satisfy Article III standing (*Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 665-666 (7th Cir. 2001)), to date, the Seventh Circuit has yet to rule on this issue in the context of a TCPA claim. Plaintiffs will likely argue that this Court to apply *Crabill* to their TCPA claims. However, the better approach would involve dismissing staying this case until the Supreme Court decides a pending appealing involving whether plaintiff can satisfy Article III standing in a Real Estate Settlement Services Act ("RESPA") case the absence of actual damages. *See First American Financial Corporation vs. Edwards*, No. 10-708 (argued on November 28, 2011).[1] *Edwards* involves an appeal from the Ninth Circuit where the Ninth Circuit Court of Appeals rejected a defendant's Article III challenge where the plaintiff had failed to allege any actual damages in a case involving a claim under RESPA. If the Supreme Court reverses the Ninth Circuit in the coming months and holds and actual damages are an element that must be pled to satisfy Article III involving RESPA, such a holding will require this Court to reexamine *Crabill* and dismiss Plaintiffs' TCPA claim because no actual damages have been pled and the TCPA, like RESPA, is a consumer rights statute.

To the extent Plaintiffs argue that they have standing to *require Defendant to comply* with mandates of the TCPA and the FDCPA, this argument should be rejected. The Supreme Court has rejected standing based upon an "interest in seeing that the law is obeyed." *Akins,* 524 U.S. at 24. *See also, Steel Co.,* 523 U.S. at 107 (explaining that an interest in seeing "that a wrongdoer gets his just deserts" or "that the Nation's laws are faithfully enforced" is "not … a cognizable Article III injury"). Equating such interests with cognizable injuries would effectively authorize "citizen suits to vindicate the public's nonconcrete interest in the proper administration of the laws," an outcome this Court has decisively rejected. *Massachusetts v. EPA,* 549 U.S. at 516-17

---

[1] See, http://www.supremecourt.gov/Search.aspx?FileName=/docketfiles/10-708.htm.

7

(internal quotation marks omitted).

For the reasons set forth below, Defendant respectfully that this Honorable Court dismiss Plaintiff's Complaint with prejudice. Alternatively, Defendant respectfully that this Honorable Court stay Plaintiff's case until the Supreme Court rules on the *Edwards* case.[2]

### B. Plaintiff Has Failed to Allege a TCPA Claim

The TCPA makes it unlawful for any person within the United States or any person outside the United States if the recipient is within the United States

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice-...
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]

TCPA, 47 U.S.C. § 227(b)(1)(A).

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate if, taking all factual allegations as true, the complaint fails to state a plausible claim for relief on its face. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556-57 (2007). The plausibility standard means that the complaint must state "enough facts to raise a reasonable expectation that discovery will reveal evidence of" the matter complained of. *Id.* at 556. The Plaintiff is required to provide more than just labels and legal conclusions, "a formulaic recitation of the elements of a cause of action will

---

[2] Staying this case while the *Edwards* appeal is pending is consistent with FRCP 1 which provides that the Federal Rule of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." *Pfizer*, 640 F.Supp.2d at 1010 (stating that a stay is appropriate to prevent a waste of judicial and party resources); *Genzyme Corp. v. Cobrek Pharmaceuticals, Inc.*, 2011 WL 686807 (N.D. Ill. Feb. 17, 2011) (stating that there is no prejudice to the non-movant where limited discovery has been conducted, no depositions have been taken, and no trial date has been set). Here, only limited written discovery has taken place and Plaintiffs have only recently added Capital One as a defendant (who has yet to appear).

130272534 0927670

not do." *Id.* at 555. One court has held that "[t]he only elements Plaintiff must successfully plead are: that Defendant made the call; Plaintiff was charged for the call; and the call was made using any automatic telephone dialing system . . . ." *Knutson v. ReplyA, Inc.*, 2011 WL 291076, *1 (S.D. Cal. 2011).

Plaintiffs claim that "Leading Edge used dialing equipment, along with Aspect Software, to dial telephone calls in 2010" and claim that "[t]he dialing equipment Leading Edge used in 2010 had the capacity to dial numbers as part of a dialing campaign, where an employee loaded a batch of telephone numbers into the system, and the system automatically dialed the numbers." SAC ¶ 11. Plaintiffs also claim that "Leading Edge used the same dialing equipment that it used to do dialing campaigns, along with Aspect Software, to dial plaintiff Martin's cell phone number in September 2010 . . . [and] to dial plaintiff Mack's cell phon number in 2010." SAC ¶¶ 13, 15.

### 1. Plaintiffs Have Failed to Allege That The Were Called Via a Prohibited "Automatic Telephone Dialing System"

While Plaintiffs have alleged that "[t]he TCPA prohibits the use of 'any automatic telephone dialing system' to call cellular telephones," they have failed to adequately allege that they were actually called via so-called "automatic telephone dialing system." In *Knutson*, the district court dismissed a claim where it found that plaintiff had failed to adequately allege that it was called via an automatic telephone dialing system. *Knutson*, at *2 ("As an isolated assertion, it is conclusory to allege that messages were sent 'using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.' Such a naked assertion need not be taken as true." (citing *Kramer v. Autobytel, Inc.,* 2010 U.S. Dist. LEXIS 137257 at *12-*13 (N.D.Cal. Dec. 29, 2010)).

9

In dismissing the complaint, the court in *Knutson* contrasted the allegations which where pled upon "information and belief," with the allegations in *Kramer*:

> *Kramer* relied on allegations about the call to infer the use of an automatic system. "Kramer described messages from SMS short code 77893, a code registered to B2Mobile. The messages were advertisements written in an impersonal manner. Kramer had no other reason to be in contact with Defendants." *Id.* at *13. Here, the complaint gives no details about the manner of the calls except that they were solicitations about Defendant's real estate related business. (Am.Compl.¶ 7.) There is nothing in the complaint that allows the court to infer the calls were randomly generated or impersonal.
>
> Accordingly, the Court finds that Plaintiff has failed to state a claim for relief based on the Telephone Consumer Protection Act because he has failed to plead one of the necessary elements.

Although the Plaintiffs have deleted the conditional words "upon information and belief" which were pled in the First Amended Complaint, they have failed to allege any facts which support a plausible TCPA claim under *Twombly,* 550 U.S. at 555-57. Unlike *Kramer*, there are no allegations that Plaintiffs received any impersonal or pre-recorded message of any kind. Rather, Plaintiffs appear to have attempted to assert a TCPA claim simply by alleging that "[t]he dialing equipment Leading Edge used in 2010 had the capacity to dial numbers as part of a dialing campaign, where an employee loaded a batch of telephone numbers into the system, and the system automatically dialed the numbers." SAC ¶ 11.

Further, while Plaintiffs allege in paragraph 9 of the SAC that an "'[a]utomatic telephone dialing system' means any equipment that has the "*capacity* to dial numbers without human intervention,'" Plaintiffs do not allege that *Leading Edge's telephone system* has the "capacity to dial numbers without human intervention." Rather, Plaintiffs simply allege that "Leading Edge used *the same dialing equipment* that it used to do dialing campaigns, along with Aspect Software, to dial plaintiff Martin's cell phone number in September 2010 . . . [and] to dial plaintiff Mack's cell phon number in 2010." SAC ¶¶ 13, 15 (emphasis supplied). Plaintiffs' use

10

of the phrase "the same dialing equipment" is meaningless because there are no allegations that the so-called "dialing equipment" - had the capacity to dial numbers without human intervention.

Because Plaintiffs have failed to allege that Leading Edge called them with a phone system that had the "capacity to dial numbers without human intervention," the Second Amended Complaint should be dismissed.

### 2. Plaintiffs Have Failed to Allege That They Were Charged For Any Calls

Plaintiffs have failed to allege that they were charged for the call that Leading Edge allegedly placed. *Knutson*, 2011 WL 291076, *1. While the Honorable Amy Judge St. Eve has held that a plaintiff did not need to allege that it was charged for text messages, *Lozano v. Twentieth Century Fox Film Corp.*, 702 F.Supp.2d 999, 1009-10 (N.D. 2010), this case does not involve text messages.[3] Defendant's research has not uncovered any other reported Northern District of Illinois decisions which have directly addressed this issue.[4]

### C. Count II Fails to State Any Violations of the FDCPA

The FDCPA was designed to address many forms of collection abuse:

> obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.

Senate Report at p. 2, 1977 U.S.C.C.A.N. at p. 1696.

---

[3] *See also Abbas v. Selling Source, LLC,* No. 09 C 3413, 2009 WL 4884471, at *3 (N.D.Ill.Dec.14, 2009) (holding that statute does not require party to be charged for text messages).

[4] If Plaintiffs believe that Defendants' calls caused them to exceed their monthly flat rate plan <u>and</u> that they were charged additional minutes (over the plan) for one or more calls, they should be required to plead such allegations.

130272534 0927670

Plaintiff Martin claims that Leading Edge violated §§ 1692e and 1692f of the FDCPA by lying to him "during a telephone conversation . . . when it told [him] that his relative (the alleged debtor) had provided [him] and his telephone number as a 'contact person' with respect to an alleged debt. SAC ¶ 38. Plaintiff Martin also alleges that Leading Edge's calls to him violated §§ 1692d 1692e and 1692f because Leading Edge "had no legitimate reason to call plaintiff . . . [because] it had location information for the true debtor." SAC ¶ 39.

Martin's FDCPA based allegations fail to state a claim under the FDCPA. Moreover, the above allegation fails to pass muster under *Twombly* as the facts do not demonstrate a plausible claim. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 1949, 173 (2009) (citing *Twombly,* 550 U.S. at 556). Although the court must accept as true all well-pleaded facts and draw all permissible inferences in Martin's favor, it need not accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal,* 129 S.Ct. at 1949. Legal conclusions can provide a complaint's framework, but unless well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a claim. *Id.* at 1950-51. Against these standards, dismissal is proper.

As a threshold matter, there are no allegations which support Martin's contention that "defendant had location information for the true debtor." This allegation is undermined by the fact that it is more plausibly to suggest that Leading Edge contacted after it was unable to reach the debtor. Each FDCPA claim is addressed below.

130272534 0927670

### 1. Section 1692d

Count II attempts to assert a violation § 1692d of the FDCPA which prohibits: "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Section 1692d sets forth a non-exclusive list of the sorts of conduct that are encompassed by the section. Here, the alleged call to Plaintiff does not violate the FDCPA because it does not constitute a harassing, oppressive or abusive call.

"Any call from a debt collector may be presumed to be unwelcome, but that alone is insufficient to constitute a violation of the FDCPA." *Martin v. Select Portfolio Serving Corp.,* 2008 WL 618788, at *6 (S.D.Ohio March 3, 2008). Typically claims under §1692d relate to call volume cases. Even where there have been numerous calls made by a debt collector, the courts have found no harassment. *See, e.g., Tucker v. CBE Group,* 710 F.Supp.2d 1301 (M.D.Fla. 2010) (57 calls made to a nondebtor; intent was to reach the debtor). Moreover, yelling and rude language, while disrespectful, does not by itself violate § 1692d. *Majeski v. I.C. Sys., Inc.,* 2010 WL 145861, at *4 (N.D.Ill. Jan. 8, 2010); *Bassett v. I.C. Sys., Inc.,* 715 F.Supp.2d 803, 809 (N.D.Ill. 2010) (although language was rude, it did not rise to the level of a violation under FDCPA 15 U.S.C. § 1692d(2)). Here, there are no allegations of rude behavior. Accordingly, the Complaint sets forth no facts plausibly suggesting that there was an intent to harass.

### 2. Section 1692e

Section 1692e generally prohibits "false or misleading representations." In particular, § 1692e provides that a debt collector "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." A false or misleading statement made during an attempt to collect a debt does not violate the FDCPA if the statement

130272534 0927670

is immaterial to the consumer. *Hahn v. Triumph P'ship LLC,* 557 F.3d 755, 757-58 (7th Cir. 2009). Here, the alleged representation is not material in nature. Rather, whether Leading lied to Mr. Martin about whether it had valid contact information for the debtor is *immaterial.* Defendant's research has failed to uncover any case which has found a violation of § 1692e under the facts alleged.

### 3. Section 1692f

Section § 1692f generally prohibits "unfair [collection] practice[s]." It provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Section 1692f identifies a non-exhaustive list of prohibited conduct. The allegations of the SAC do not fall within any of the prohibited conduct. That is because there is nothing "unfair" about an attempt to contact Mr. Martin in the manner described.

Dismissal is also proper because there are no facts which suggest that Defendant communicated to Plaintiff that it was it was attempting "to collect or attempt to collect any debt." Rather, it appears that Defendant was attempting to locate the debtor which is permissible under the FDCPA. Finally, Defendant's research has failed to uncover any case which has found a violation of § 1692f under the facts alleges.

WHEREFORE, for the above reasons, Defendant respectfully that this Honorable Court dismiss Plaintiffs' Second Amended Complaint with prejudice pursuant to FRCP 12(b)(1) and 12(b)(6). Alternatively, Defendant respectfully that this Honorable Court stay Plaintiff's case until the Supreme Court rules on the *Edwards* case.

Date: February 3, 2012                        Respectfully submitted,

                                              /s/*David M. Schultz*
                                              David M. Schultz
                                              James C. Vlahakis
                                              222 N. LaSalle, Suite 300
                                              Chicago, IL 60601
                                              312-704-3000
                                              Attorneys for Defendant

130272534 0927670

**CERTIFICATE OF SERVICE**

I hereby certify that on February 3, 2012, I electronically filed the above notice of motion with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

/s/ James C. Vlahakis
James C. Vlahakis
Hinshaw & Culbertson LLP
Attorney for Defendant
222 North LaSalle, Suite 300
Chicago, IL 60601
tel 312-704-3715

130272534 0927670