IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS MARTIN and DAVID MACK on behalf of himself and others similarly situated,<br>    Plaintiff,<br><br>v.<br><br>LEADING EDGE RECOVERY SOLUTIONS, LLC and CAPITAL ONE BANK (USA) N.A.,<br>    Defendants. | 1:11-cv-5886<br>Judge Lefkow<br>Magistrate Judge Kim<br><br>JURY DEMANDED |

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY

Defendants urge this Court to stay this case until the Supreme Court rules in an unrelated case brought pursuant to the Real Estate Settlement Procedures Act, RESPA: *First American Financial Corp. v. Edwards*, No. 10-708.

This case is nothing like *Edwards*, and the motion should be denied.

The question in *Edwards* is whether the plaintiff has any damages at all. The plaintiff in *Edwards* sued his title insurance company under RESPA for paying illegal kickbacks in exchange for exclusive referral agreements. Typically, such RESPA kickback cases result in the plaintiff paying higher fees than he would have otherwise because of the kickback. The *Edwards* plaintiff lived in a state where title insurance fees are *fixed*, regardless of whether any kickback happened. Thus, the issue in *Edwards* centers around whether Congress can create a cause of action where the plaintiff has no "injury" other than the fact that Congress decided it was in the public interest to prohibit transactions where such relationships exist.

In contrast, plaintiffs here allege that the illegal phone calls constituted invasions of privacy. (SAC ¶21) Invasion of privacy is the "injury" Congress sought to redress in passing the TCPA.

1

This precise point was repeated throughout the Supreme Court's decision in *Mims v. Arrow Financial Services, Inc.*, 132 S.Ct. 740 (Jan. 18, 2012), which held that a TCPA plaintiff has federal question subject matter jurisdiction to sue in federal court. Writing for a unanimous court, Justice Ginsberg peppered the decision with reference to invasion of privacy:

> This case concerns enforcement, through private suits, of the Telephone Consumer Protection Act of 1991 (TCPA or Act), 47 U.S.C. § 227. Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes—prompted Congress to pass the TCPA. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls.
>
> The Act bans certain practices invasive of privacy and directs the Federal Communications Commission (FCC or Commission) to prescribe implementing regulations. …. Congress also provided for civil actions by private parties seeking redress for violations of the TCPA or of the Commission's implementing regulations.

*Mims* at 744 (paragraph break supplied).

> In enacting the TCPA, Congress made several findings relevant here. "Unrestricted telemarketing," Congress determined, "can be an intrusive invasion of privacy." TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings) (internal quotation marks omitted).
>
> In particular, Congress reported, "[m]any consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes." Ibid. (internal quotation marks omitted). "[A]utomated or prerecorded telephone calls" made to private residences, Congress found, were rightly regarded by recipients as "an invasion of privacy." Ibid.

*Mims* at 745 (paragraph break supplied).

> The federal interest in regulating telemarketing to "protec[t] the privacy of individuals" while "permit[ting] legitimate [commercial] practices," 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings) (internal quotation marks omitted), is evident from the regulatory role Congress assigned to the FCC.

*Mims* at 751. Although these quotations have mostly to do with telemarketing, the Mims case concerned a Chicago area debt collection agency, just as this one does.

Controlling law in the Seventh Circuit, and everywhere else, permits Congress to provide a statutory private right of action by defining a legally protected interest, such as privacy. In *Crabill v. Trans Union*, *LLC*, 259 F.3d 662, 665-666 (7th Cir. 2001), a Fair Credit Reporting Act case with damages similar to those here, the Seventh Circuit explained:

> What is true is that if no injury is alleged (or, if the allegation is contested, proved, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)), and as a result there is no case or controversy between the parties within the meaning of Article III of the Constitution, the plaintiff cannot base standing on a claim for attorneys' fees. Otherwise the limitation of federal jurisdiction to cases and controversies would be empty. But we cannot stop here, despite Crabill's failure to prove injury to himself.
>
> Many statutes, notably consumer-protection statutes, authorize the award of damages (called "statutory damages") for violations that cause so little measurable injury that the cost of proving up damages would exceed the damages themselves, making the right to sue nugatory.
>
> It is the same theory that underlies the class action, the core function of which is to enable the litigation of claims too small to warrant the costs of prosecuting a separate suit for each claim. The award of statutory damages could also be thought a form of bounty system, and Congress is permitted to create legally enforceable bounty systems for assistance in enforcing federal laws, provided the bounty is a reward for redressing an injury of some sort (though not necessarily an injury to the bounty hunter)"

665-666 (Citations omitted or truncated, paragraph breaks supplied). See also, *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir.2006) ("That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury.").

Here plaintiffs have alleged in paragraph 21 of the Second Amended Complaint, that

> Plaintiffs and the class were substantially damaged by defendants' calls. Their privacy was improperly invaded, they were annoyed and were forced to use airtime in their cell phone plans and forced to tend to the unwanted calls.

In other words, plaintiffs alleged that their damages are precisely that which Congress sought to protect against: invasion of privacy.

3

Furthermore, plaintiffs also allege another concrete injury aside from invasion of privacy: their cellular telephone airtime was used in having to deal with the annoying calls. The FCC has long recognized that the use of airtime minutes out of a "bucket" cellular telephone plan constitutes being "charged for the call:"

> The Commission has long recognized, and the record in this proceeding supports the same conclusion, that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Wireless subscribers who purchase a large "bucket" of minutes at a fixed rate nevertheless are charged for those minutes, and for any minutes that exceed the "bucket" allowance. This "bucket" could be exceeded more quickly if consumers receive numerous unwanted telemarketing calls.

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, at ¶ 165, 18 FCC Rcd. 14,014, 14,115 (July 3, 2003).[1]

Whatever happens with the *Edwards* decision, it is inconceivable that the decision as to whether a RESPA plaintiff needs injury-in-fact to his person will compel dismissal of this case, where the injury alleged is invasion of privacy and use of cellular telephone minutes.

**CONCLUSION**

For the forgoing reasons, the motion to stay should be denied.

Respectfully submitted,

/s/Alexander H. Burke

**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601

---

[1] FCC final orders are not reviewable in the United States district courts. Typically, federal agency regulations are subject to review by a federal District Court pursuant to that test. *CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010). However, because of the Administrative Orders Review Act, also known as the "Hobbs Act," properly entered final orders by the FCC are not reviewable by any Court other than through an action against the FCC that originates in the United States Court of Appeals (except the Federal Circuit), or through a motion for reconsideration to the FCC itself. 28 U.S.C.§ 2342; *Prism Business Media, Inc.*, 606 F.3d at 446.

(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

5