**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS MARTIN, and DAVID MACK on behalf of themselves and others similarly situated | ) ) ) ) | 11-cv-5886 |
| Plaintiffs | ) ) | Judge Lefkow |
| v. | ) ) | |
| LEADING EDGE RECOVERY SOLUTIONS, LLC and CAPITAL ONE BANK (USA) N.A., | ) ) ) ) ) | |
| Defendants | ) | |

**REPLY BRIEF IN SUPPORT OF COMBINED MOTION TO DISMISS**

Defendant LEADING EDGE RECOVERY SOLUTIONS, LLC ("Leading Edge"), submits the following Reply Brief in Support of its Combined Motion to Dismiss.

**I.     Introduction**

Plaintiff Nicholas Martin and Leading Edge have settled Plaintiff's individual Fair Debt Collection Practices Act claim (Count II).  Accordingly, this Reply Brief will focus on the three arguments advanced in support of the dismissal of Plaintiffs Martin and David Mack's claims in Count I which are brought pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, ("TCPA").  Leading Edge has moved to dismiss the Plaintiffs' TCPA claims for the following reasons:  (a) the failure to allege an actual injury and corresponding absence of Article III standing; (b) the failure to allege the use of a prohibited "auto-dialer"; and (c) alternatively, the failure to allege that Plaintiffs where charged for the calls that they received.

For these reasons, Leading Edge's Motion to Dismiss should be granted.

## II. Argument

### A. Plaintiffs Have Suffered No Injury and Thus Lack Article III Standing

Plaintiffs incorrectly argue that they suffered actual injuries as a result of the alleged autodialed calls. Plaintiffs argue at page two and three of their Response that they "were forced to use minutes on their cell phone plans." They also argue that "both plaintiffs were annoyed" by the so-called unwanted calls. Response at pp. 2-3. Finally, they also allege that "[t]heir privacy was invaded." *Id*. at p. 3. None of these alleged injuries give rise to an actual or concrete injury sufficient to satisfy Article III standing.

#### 1. Minutes From a Phone Plan Does Not Constitute a Article III Injury

Plaintiffs broadly allege they "were forced to use minutes on their cell phone plans." Response at pp. 2-3. Paragraph 21 of the Second Amended Complaint ("SAC") phrases the purported injury in a slightly different manner: "Plaintiffs . . .were forced to use *airtime in* their cell phone plans." (Emphasis supplied). Plaintiffs, however, do not allege, nor do they argue in their Response, that any of the calls that they allegedly received caused them to use any minutes *above and beyond* what are provided to them in their monthly cell phone plans.

Moreover, while they do not identify the costs of their monthly cell phone plans, they do not allege that they incurred any additional costs *above and beyond* their monthly cell phone plans. For example, they do not allege that any of the calls caused them to pay any overage charges on a per-minute basis for any call received.

As this Court is aware, the purpose of paying a flat monthly cell phone fee for a certain number of minute (or an unlimited plan) is to avoid paying per minute charges for each call. When subscribers go over their monthly minutes, they are charged additional rates. More often than not, the overage rates are at a higher rate than the discounted per minute fee contained

within monthly cell phone plan. Here, Plaintiffs do not allege that they were charged anything above and beyond the monthly fee that they had contracted to pay. Accordingly, Plaintiffs have not satisfied Article III standing because they have not suffered any actual injuries. *Doe v. Chao*, 540 U.S. 614, 624-25 (2004) (only a plaintiff "subjected to an adverse effect has injury enough to open the courthouse door").

Plaintiffs' allegations, and the absence of any claim that they used or paid for additional minutes above and beyond their monthly plans, *demonstrate that they are exactly like the plaintiff* in the pending appeal before the Supreme Court. The issue in *First American Financial Corporation vs. Edwards* was whether a plaintiff could satisfy Article III when the plaintiffs was steered to a particular title insurance company on account of a kickback but did not allege that she paid too much for the insurance, obtained substandard insurance or suffered any other particular injury in fact? In the end, the plaintiff paid the same amount for the title insurance as all other similarly situated individuals who bought title insurance. Here, even if a few minutes of a monthly phone plan were used up, Plaintiffs were not charged any more for their phone service for receiving the calls at issue, and they did not go over their allotted monthly minutes. Accordingly, the *Edwards* appeal before the Supreme Court deals with the identical issue presented here - whether a plaintiff can satisfy Article III standing where he/she does not incur any injuries.

            **2.     Alleged "Annoyance" Does Not Constitute a Article III Injury**

Plaintiffs' also claim that they have satisfied Article III standing by claiming that they were "injured" by virtue of the alleged *annoying* nature of the phone calls. Response, pp. 2-3; SAC, ¶¶ 21. Plaintiffs' brief highlights the fact that certain autodialed telemarketing phone can be annoying. Response, pp. 8, 12. Of course, Plaintiffs are not suggesting that all autodialed

3

calls are annoying. Rather, the following automated messages function to assist people: school closing messages; credit/debit card fraud alerts; and late payment reminders, just to name a few.

Thus, while Plaintiffs may profess to have been "annoyed," it is axiomatic that Article III's constitutional threshold is not met by merely alleging petty annoyances. The Constitution's minium threshold for a cognizable injury has much tougher skin. People suffer petty annoyances throughout their daily lives. Having said that, as set forth in Leading Edge's Memorandum of Law (pp.5-6), it is not proper for Congress to "legislate" away these annoyances by providing plaintiffs with $500 recoveries for the annoyance of receiving an autodialed call to their cell phone. *Summers v. Earth Island Inst.,* 129 S. Ct. 1142, 1151 (2009) ("the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute.").

It is well recognized that Congress cannot ignore the minimum requirements of constitutional standing, where here, Plaintiffs have not suffered any financial damage from receiving the alleged calls. *See, e.g., Arizona Christian Sch. Tuition Org. v. Winn,* 131 S. Ct. 1436, 1449 (2011) ("In an era of frequent litigation, class actions, sweeping injunctions with prospective effect, and continuing jurisdiction to enforce judicial remedies, courts must be more careful to insist on the formal rules of standing, not less so.").

Even if Congress if satisfied Article III in enacting the TCPA to police "annoying" phone calls, the facts of this case do not suggest that the phone calls were truly annoying. Significantly, Plaintiffs gloss over the fact that Plaintiff Martin was only called on one occasion in September of 2010. *See* SAC ¶¶ 13-14, 38.[1] Plaintiff Martin was not subjected to a dropped call. *Id.* at ¶ 38. Rather, he spoke with an operator. *Id.* This can hardly constitute an "annoyance" worthy of Article III standing. Even if it was annoying to answer the phone, the

---

[1] Although the SAC alludes to other calls (SAC ¶ 17), these allegations are improperly pled upon information and belief.

4

one call at issue cannot satisfy Article III standing. Similarly, there are no well pled facts to suggest that Plaintiff David Mack was called more than once, let alone facts which support any alleged "annoyance."

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate if, taking all factual allegations as true, the complaint fails to state a plausible claim for relief on its face. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556-57 (2007). The plausibility standard means that the complaint must state "enough facts to raise a reasonable expectation that discovery will reveal evidence of" the matter complained of. *Id.* at 556. Plaintiffs are required to provide more than just labels and legal conclusions, "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.

Here, both Plaintiffs have merely attempted to assert "a formulaic recitation" of Article III standing. As noted above and in Leadings Edge's Memorandum of law, it is axiomatic that Article III standing requires an actual injury in fact. *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992); *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83 (1998). Alleged annoyances do not equate with an injury in fact. Against this backdrop, the most important thing to consider is the fact that the TCPA creates an *in terrorem* effect to the extent non-existent injuries like the ones in this case will lead to catastrophic damages. *See, e.g., AT&T Mobility LLC v. Conception,* 131 S. Ct. 1740, 1752 (2011) ("[W]hen damages allegedly owed to tens of thousands of potential claimants are aggregated and decided at once, the risk of an error will often become unacceptable.").

Plaintiffs' reliance on *Mitchem vs. Illinois Collection Services, Inc.* 2010 WL 3003990 (N.D. Ill. July 29, 2010) misses the mark. *Mitchem* neglected to consider any of the Supreme Court cases which have been cited in Leading Edge's Memorandum of Law. Instead, the

130310445 0927670

*Mitchem* decision rested on a lone citation to a Seventh Circuit case, *Discovery House, Inc. v. Consol. City of Indianapolis,* 319 F.3d 277, 279 (7th Cir.2003), which did not involve a statutory based consumer protection statute like the TCPA. Rather, *Discovery House* involved the Americans With Disabilities Act ("ADA") and the Rehabilitation Act ("RA") where the Seventh Circuit held that a for-profit corporation lacked standing, under the ADA and RA, to seek damages from city and county for profits lost when city and county allegedly violated those acts by determining that corporation's proposed drug treatment facility was not a permitted use in an area zoned for doctor's offices and hospitals. Accordingly, since *Mitchem* relied on a case that was hardly on point, it follows that it does not adequately address the important issue before this Court and the Supreme Court.

> **B.    Plaintiffs Have Not Properly Alleged that They Were Called With an Automatic Telephone Dialing System**

Notably, Plaintiffs have failed to allege that *they were called* with a prohibited autodialer. Rather, Plaintiffs' argument rests on *speculating* that they were called via an autodialer simply because they contend Leading Edge has certified that that it "uses an 'automatic dial announcing device.'" Response, p. 13. Plaintiffs go on to suggest that Leading Edge's "motion to dismiss is a sham." *Id*. That is a bold accusation to make where there are no facts pled which "plausibly" suggest that Plaintiffs were called with a prohibited autodialer. *Twombly,* 550 U.S. at 556-57. Simply alleging that Leading Edge has certified that it uses a so-called "automatic dial announcing device" (not an autodialer) in the state of Texas and including a *speculative* assumption that the same dialer was used to call Plaintiffs is not enough. *Id*. at 555 ("a formulaic recitation of the elements of a cause of action will not do.").

The fact that Judge St. Eve allowed Mr. Martin to survive a motion to dismiss against *another* debt collector in *Martin vs. Bureau of Collection Recovery, Inc.*, 10-cv-7725 (the "BCR

case"), does not support a similar ruling in this case. Significantly, in the BCR case, Mr. Martin pled additional facts which he has not pled here. In paragraph 16 of the BCR Complaint, Mr. Martin alleged that when the defendant's phone system made calls, "a prerecorded message is played, as what happened with BCR's call to plaintiff on November 5, 2010, even though plaintiff answered the call." *See* Exhibit A, Amended Complaint in *Martin vs. Bureau of Collection Recovery, Inc.*, 10-cv-7725, dkt. 21. Here, there are no similar allegations, as the SAC simply alleges that Leading Edge's phone system *had* the capacity to utilize a so-called autodialer and then Plaintiffs speculate that the same system called Mr. Martin. Compare paragraph 11 of the SAC ("The dialing equipment Leading Edge used in 2010 had the capacity to dial numbers as part of a dialing campaign, where an employee loaded a batch of telephone numbers into the system, and the system automatically dialed the numbers") to paragraph 13 of the SAC ("Leading Edge used the same dialing equipment that it used to do dialing campaigns, along with its Aspect Software, to dial plaintiff Martin's cell phone number in September 2010"). Accordingly, unlike the BCR case, there are no facts pled, consistent with *Twombly*, which plausibly suggest that either Plaintiff was called via a prohibited autodialer.

    **C.**    **Plaintiffs Have Failed to Allege that They Were Charged for Calls**

As discussed above, Plaintiffs have failed to allege that they suffered injury because they have not alleged that they were required to pay for any minutes or charge over their costs of their cell phone plans. Because Plaintiffs have failed to satisfy Article III standing, this Court is not even required to analyze whether the TCPA requires Plaintiffs to allege that they were charged for any of the subject calls.

To the extent necessary, even in the absence of Article III's concrete injury requirement, Leading Edge still believes that TCPA requires Plaintiffs to assert that they were charged for the

7

subject calls. The sole case cited by Plaintiffs, *Mitchem vs. Illinois Collection Services, Inc.* 2010 WL 3003990 (N.D. Ill. July 29, 2010) is not on point. There, the court *presumed* that the person had been charged for the call(s) in question. According to the court, "it is reasonable to infer that plaintiff paid for service to the cell phone number ICS called, which is enough to confer standing." *Id.* at *1. Here, Plaintiffs have neglected to suggest that they were charged for any of the subject calls. The remaining authorities that Plaintiffs cite from outside this district do not adequately address any proper basis to hold that a person can state a TCPA claim without being charged for the subject call. While Congress may have seen fit to enact the TCPA in 1991 to combat annoying tele-marketing calls, it did so in an era where people paid for calls on a per-minute basis, and presumptively, every inbound call resulted in a charge. Here, Plaintiffs admittedly are on cell phone plans which cause them to get charged a flat monthly fee. Because Plaintiffs did not incur charges beyond their set monthly charges, they cannot claim to have been charged for any calls. For this reason along, they cannot state claims under the TCPA.

WHEREFORE, for the above reasons, Defendant respectfully that this Honorable Court dismiss Plaintiff's Second Amended Complaint with prejudice.

| Date: March 26, 2012 | Respectfully submitted, |
|---|---|
| | /s/ James C. Vlahakis <br> David M. Schultz <br> James C. Vlahakis <br> 222 N. LaSalle, Suite 300 <br> Chicago, IL 60601 <br> 312-704-3000 <br> Attorneys for Defendant |

130310445 0927670

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2012, I electronically filed the above notice of motion with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

/s/ James C. Vlahakis
James C. Vlahakis
Hinshaw & Culbertson LLP
Attorney for Defendant
222 North LaSalle, Suite 300
Chicago, IL 60601
tel 312-704-3715

130310445 0927670