IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS MARTIN and DAVID MACK, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> LEADING EDGE RECOVERY SOLUTIONS, LLC and CAPITAL ONE BANK (USA), N.A., <br><br> Defendants. | No. 11 C 5886 <br><br> Judge Joan H. Lefkow |

## OPINION AND ORDER

Nicholas Martin and David Mack filed this putative class action against Leading Edge Recovery Solutions, LLC and Capital One Bank (USA), N.A., alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*[1] Before the court are Leading Edge's and Capital One's motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, the motions [#38, 57] will be denied.

---

[1] Martin also asserted a claim in his individual capacity against Leading Edge for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* Martin and Leading Edge agreed to settle the FDCPA claim and therefore the court need not consider Leading Edge's argument that the FDCPA claim must be dismissed pursuant to Rule 12(b)(6).

## FACTS[2]

Leading Edge is a debt collection company; Capital One is a national bank that issues credit cards. In 2010, both companies used equipment that allowed them to dial and call telephone numbers that had been pre-loaded by their employees into an automatic dialing system. They also used automatic dialing software manufactured by Aspect Software. (*See* Compl. Ex. A.)

Leading Edge used automatic dialing equipment, along with Aspect Software, to call Martin's and Mack's cell phones in 2010. Leading Edge called Mack's cell phone ten times during September 2010 and left one or more prerecorded voice messages.[3] Leading Edge called Martin at least once using automatic dialing equipment. Leading Edge had received Martin's and Mack's cell phone numbers from Capital One, which requested Leading Edge to collect on an account for Julie Mack, who is Mack's mother and Martin's aunt.[4]

---

[2] Unless otherwise noted, the following facts are taken from plaintiffs' second amended complaint and are presumed true for the purpose of resolving the pending motions. Defendants argue that certain allegations in the complaint must be disregarded because they are alleged upon information and belief. Even after *Iqbal* and *Twombly*, however, there is no prohibition on alleging claims based on information and belief, particularly where the facts that support the allegations are within the defendant's knowledge or control. *See Trs. of the Auto Mechs.' Indus. Welfare & Pension Funds Local 701* v. *Elmhurst Lincoln Mercury*, 677 F. Supp. 2d 1053, 1054–55 (N.D. Ill. 2010); 2–8 James Wm. Moore et al., *Moore's Federal Practice – Civil* § 8.04 (3d ed.). The court has considered these allegations together with the other facts alleged in the complaint.

[3] Plaintiffs alleged the specific number of times Leading Edge called Mack's phone, and that Mack received unwanted voice messages, for the first time in their in responses to defendants' motions to dismiss. The court may consider these facts because they are consistent with the allegations in plaintiffs' complaint and do not have the effect of amending the complaint to assert a new claim. *See*, *e.g.*, *Geinosky* v. *City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *Hentosh* v. *Herman M. Finch Univ. of Health Sciences/The Chicago Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir. 1999); *Jones* v. *Sabis Educ. Sys., Inc.*, No. 98-4252, 1999 WL 1206955, at *3 (N.D. Ill. Dec. 13, 1999).

[4] Plaintiffs first alleged that Julie Mack was the original account holder in response to defendants' motions to dismiss. The court considers this fact for the reasons stated in footnote 3.

Capital One or its affiliate also called Martin's and Mack's cell phones sometime between 2007 and 2011 in connection with a debt collection. Some or all of these calls were made using predictive dialing equipment and used a prerecorded or artificial voice message.

Neither Martin nor Mack gave their cell phone numbers to Leading Edge or Capital One. Martin and Mack were annoyed by the calls, which used air time from their cell phone plans and forced them to attend to unwanted calls.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof is on the party asserting jurisdiction. *United Phosphorus, Ltd*. v. *Angus Chem. Co*., 322 F.3d 942, 946 (7th Cir. 2003). In determining whether subject matter jurisdiction exists, the court must accept all well-pleaded facts alleged in the complaint and draw all reasonable inferences from those facts in the plaintiff's favor. *Sapperstein* v. *Hager*, 188 F.3d 852, 855 (7th Cir. 1999). "Where evidence pertinent to subject matter jurisdiction has been submitted, however, 'the district court may properly look beyond the jurisdictional allegations of the complaint . . . to determine whether in fact subject matter jurisdiction exists.'" *Id.* (quoting *United Transp. Union* v. *Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996)).

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp*., 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486

(7th Cir. 2002). In order to survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, 556 U.S. 622, 687, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The allegations in the complaint must be "enough to raise a right of relief above the speculative level." *Twombly*, 550 U.S. at 555. At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

## ANALYSIS

Leading Edge and Capital One argue that the complaint must be dismissed for lack of subject matter jurisdiction because plaintiffs have not established "injury in fact," a requirement for standing under Article III. Leading Edge argues that, in the alternative, plaintiffs' complaint must be dismissed under Rule 12(b)(6) for failure to state a claim.

### I. Article III Standing

To have Article III standing, plaintiffs must allege (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *See*, *e.g.*, *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (citations and quotations omitted). Such an injury may exist by virtue of a violation of statutorily-created legal rights, so long as the plaintiff is within the class of persons who are given a statutory right to relief and alleges a "distinct and palpable injury to

himself." *Warth* v. *Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975); *see also Summers* v. *Earth Island Inst.*, 555 U.S. 488, 497, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009) (although Congress can create procedural rights, Article III still requires the party bringing suit to show that the action "injures him in a concrete and personal way" (citation omitted)). A plaintiff need not suffer a substantial injury in order to establish Article III standing, however. *See*, *e.g.*, *Am. Bottom Conservancy* v. *U.S. Army Corps of Eng'rs*, 650 F.3d 652, 656 (7th Cir. 2011) ("The magnitude, as distinct from the directness, of the injury is not critical to the concerns that underlie the requirement of standing."); *Doe* v. *Cnty. of Montgomery, Ill.*, 41 F.3d 1156, 1159 (7th Cir. 1994) ("[A]n identifiable trifle is enough for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation." (quoting *United States* v. *Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14, 93 S. Ct. 2405, 37 L. Ed. 2d 254 (1973)). Even a diminution in a legally-protected interest, such as being denied the opportunity to watch wildlife, is sufficient injury. *Am. Bottom Conservancy*, 650 F.3d at 656. A plaintiff likewise has standing to bring suit for a violation of a consumer protection statute that caused "little measurable injury" so long as the suit would clearly redress "an injury of some sort." *Crabill* v. *Trans Union, LLC*, 259 F.3d 662, 665 (7th Cir. 2001) (discussing the Fair Credit Reporting Act).

Applying these principles, plaintiffs have alleged a particularized injury that is sufficient to establish standing. Plaintiffs allege that defendants violated interests that are protected by the TCPA. The TCPA prohibits the use of automatic telephone dialing systems or an artificial or prerecorded voice to make "any" non-emergency call to a telephone number assigned to a mobile phone without the called party's consent. 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA prevents

nuisance telephone calls to cell phones precisely in situations such as the one described by plaintiffs, *i.e.* where a bill collector has been hired by a creditor and then repeatedly calls a number that previously belonged to the creditor's customer. *See Soppet* v. *Enhanced Recovery Co.*, 679 F.3d 637, 638–39 (7th Cir. 2012). Congress referred to the interest protected by the TCPA as a "privacy" interest, noting that "[e]vidence . . . indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional statement of findings); *see also Mims* v. *Arrow Fin. Servs., LLC*, --- U.S. ----, 132 S. Ct. 740, 745, 181 L. Ed. 881 (2012) (quoting and discussing Congressional findings). The TCPA also protects a limited property interest, even where a consumer has prepaid for a certain number of minutes on his cell phone plan. *See Soppet*, 679 F.3d at 638–39 ("[A]n automated call to a cell phone adds expense to annoyance. . . . Bystander is out of pocket the cost of airtime minutes and has had to listen to a lot of useless voicemail."); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 14115 (Jul. 3, 2003) (reaffirming that it is unlawful to make "any call" to a cell phone using an automatic dialing system and noting that even where wireless subscribers purchase a large "bucket" of minutes at a fixed rate, the "bucket" could be exceeded more quickly if consumers receive numerous unwanted calls). Plaintiffs' allegations that they were forced to tend to unwanted calls and that the calls used airtime from their cell phone plans establishes a violation of both the privacy and property interests that are protected by the TCPA.

In addition, plaintiffs' alleged injuries "reasonably can be said to have resulted, in a[] concretely demonstrable way, from [defendants'] alleged . . . statutory infractions." *Warth*, 422

U.S. at 504. Plaintiffs' injuries are not conjectural or hypothetical, unlike some of the cases cited by Leading Edge where plaintiffs asserted a "procedural injury" that did not result in the deprivation of any concrete interest. *Cf. Summers*, 555 U.S. at 496–97 (plaintiffs did not have standing to enjoin United States Forest Service from enforcing regulations that related to salvage-timber sales where they had failed to allege that any particular timber sale or other project would impede a specific plan to enjoy the National Forests); *Lujan*, 504 U.S. at 563–64 (plaintiffs had not established injury in fact by asserting that they intended to visit areas affected by rule interpreting the Endangered Species Act, where they did not describe any concrete plans for the visits). Plaintiffs, by contrast, were directly injured by defendants' violations of the TCPA because they had to spend time tending to unwanted calls and their cell phone minutes were depleted. This is enough to establish "injury in fact" under Article III. *See Kane* v. *Nat'l Action Fin. Servs., Inc.*, No. 11-11505, 2011 WL 6018403, at *5 (E.D. Mich. Nov. 7, 2011) (plaintiff's allegation that he received several hundred phone calls on his cell phone was sufficient to establish standing to bring claim under TCPA); *Anderson* v. *AFNI, Inc.*, No. 10-4064, 2011 WL 1808779, at *6 (E.D. Pa. May 11, 2011) (plaintiff had demonstrated injury in fact by alleging that she had received nearly fifty calls to her residential number from an automated dialer); *Mitchem* v. *Ill. Collection Serv., Inc.*, No. 09-7274, 2010 WL 3003990, at *1–2 (N.D. Ill. Jul. 29, 2010) (plaintiff demonstrated injury in fact by alleging that defendant used an automated dialer to call his cell phone without his consent); *cf. Crabill*, 259 F.3d at 664 (plaintiff did not have standing to bring suit under the of the Fair Credit Reporting Act where he had failed to show that defendant's violation of the Act resulted in loss of credit or any other harm).

Defendants argue that "injury in fact" should be equated with "actual damages," and that plaintiffs' failure to allege actual damages indicates that they lack standing. Leading Edge asserts that plaintiffs must allege that they were charged in excess of their usual monthly plan or that they suffered some emotional distress. Capital One asserts that plaintiffs must allege that they suffered a concrete monetary loss, answered the unwanted cell phone calls, were called a certain (unspecified) number of times, or actually listened to the prerecorded voice messages. The issue of standing, however, is distinguishable from the merits of plaintiffs' claims. *See*, *e.g.*, *Steel Co.* v. *Citizens for a Better Environment*, 523 U.S. 83, 89, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) ("Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action in which petitioners could actually recover." (citation omitted)). To determine whether plaintiffs have standing under Article III, the relevant question is "whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *See Discovery House, Inc.* v. *Consolidated City of Indianapolis*, 319 F.3d 277, 279 (7th Cir. 2003) (quoting *Warth*, 522 U.S. at 500). As discussed above, plaintiffs plainly suffered injuries to interests that are protected by the TCPA. Defendants have cited no case holding that monetary loss or emotional distress is a prerequisite for Article III standing. *Cf., e.g.*, *Lujan*, 504 U.S. at 562–63 ("the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purposes of standing"); *Havens Realty Corp.* v. *Coleman*, 455 U.S. 363, 374, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982) (black "tester" plaintiff had standing to bring for violations of the Fair

Housing Act where she "alleged injury to her statutorily created right to truthful housing information").[5]

Moreover, neither the text nor legislative history of the TCPA supports defendants' position. Plaintiffs need not allege monetary loss in order to bring suit for violations of the TCPA. *See* discussion *infra* at p. 10–11; *see also* 47 U.S.C. § 227(b)(3) (stating that a person may recover "actual monetary loss" from the violation *or* $500 per violation, whichever is greater). Moreover, Congress concluded that "any" automated or prerecorded call would be an invasion of the called party's right to privacy, and its findings indicate that even a *de minimis* number of automated calls or voicemails would not be condoned. *See* note following 47 U.S.C. § 227 ("*Banning* such automated or prerecorded telephone calls to the home . . . *is the only effective means of protecting telephone consumers* from this nuisance and privacy invasion." (emphasis added)). Nothing in the statute indicates that Congress sought to protect only those consumers who listened to the prerecorded voicemails, answered the unwanted calls, or received a specified number of calls. Finally, Congress stated that one of the purposes of the TCPA was to protect telephone subscribers from the "nuisance" of unwanted calls, *see id.*, further undermining Leading Edge's position that plaintiffs are required to allege emotional distress.

---

[5] In their motions to dismiss, defendants repeatedly assert that the court's analysis must be governed by the Supreme Court's anticipated decision in *Edwards* v. *First American Corporation*, 610 F.3d 514 (9th Cir. 2010), *cert. granted* 131 S. Ct. 3022 (2011). After briefing was complete, the Supreme Court dismissed the writ of certiorari in *Edwards* as improvidently granted. *See* 131 S. Ct. 2536 (2012). Therefore the Ninth Circuit's opinion, which holds that a plaintiff has standing to file suit under the anti-kickback provision of the Real Estate Settlement Procedures Act even if she is not overcharged as a result of the violation, is still good law. *Edwards* is not binding on this court, but it provides significant persuasive authority in support of the conclusion that plaintiffs need not allege actual damages in order to establish injury in fact.

For all of these reasons, plaintiffs have sufficiently alleged that they suffered "injury in fact" required for Article III standing. Defendants do not contest that plaintiffs have satisfied the other requirements for standing, namely causation and redressability. Defendants' motions to dismiss for lack of subject matter jurisdiction will be denied.

## II.   Failure to State a Claim

Leading Edge argues that, even if plaintiffs have standing, the complaint must be dismissed for failure to state a claim because plaintiffs have failed to allege that the calls were made by an automatic dialing system or that they resulted in additional charges to plaintiffs. Neither contention has merit.

### A.   Automatic Dialing System

The TCPA defines the term "automatic telephone dialing system" as "equipment that has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." *Id.* § 227(a)(1). Plaintiffs allege that Leading Edge called their cell phones using equipment that automatically dialed numbers that were pre-loaded in batches by employees. They have attached, as an exhibit to their complaint, Leading Edge's 2009 application for registration of an Automatic Dial Announcing Device ("ADAD") with the Public Utility Commission of Texas. (Compl. Ex. A.) Plaintiffs' allegations and exhibits are more than sufficient to give rise to the inference that Leading Edge called them using an "automatic telephone dialing system" as that term is defined in the TCPA.

### B.   Charges for Calls

Plaintiffs claim that defendants violated 47 U.S.C. § 227(b)(1)(A)(iii), which provides that it shall be unlawful to use an automatic telephone dialing system to make non-emergency calls

10

"to any telephone number assigned to a paging service, *cellular telephone service*, specialized mobile radio service, *or* other radio common carrier service, *or any service for which the called party is charged for the call*." (emphasis added). Another court in this district concluded that the phrase "for which the called party is charged for the call" only modifies the phrase "any service" and that therefore the TCPA is violated even if the called party does not incur a charge that is specifically linked to the automated call. *Lozano* v. *Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1009–10 (N.D. Ill. 2010). The statute, read as a whole, supports this conclusion. *See Abbas* v. *Selling Source, LLC*, No. 09-3413, 2009 WL 4884471, at *3 (N.D. Ill. Dec. 14, 2009). Congress amended the TCPA in 1992 to provide that the Federal Communications Commission ("FCC") may issue rules or orders that "exempt . . . calls to a telephone number assigned to a cellular telephone service that are not charged to the called party." *See* 47 U.S.C. § 227(b)(2)(C). If the TCPA only prohibited calls to cell phones that result in a charge to the called party, then it would be unnecessary to create exemptions for uncharged calls. *Abbas*, 2009 WL 4884471, at *3. "Courts avoid such ineffective statutory construction." *Id.* (citing *In re Merchants Grain, Inc.*, 93 F.3d 1347, 1353–54 (7th Cir. 1996)).

Leading Edge does not cite to any section of the TCPA or its legislative history to support its position that a plaintiff must allege that he was charged for a call in order to state a claim under the Act. The only case cited by Leading Edge, *Knutson* v. *Reply!, Inc.*, No. 10-1267, 2011 WL 291076, at *1 (S.D. Cal. Jan. 27, 2011), simply asserts without citation to authority that a plaintiff must plead that it was charged for the call in order to state a claim under the TCPA. In that case, the plaintiff specifically alleged that he was charged for incoming calls and the court did not analyze the issue in detail. *Knutson* is not persuasive.

11

The plain language of the statute supports plaintiffs' position that an automated call is prohibited by the TCPA even if the called party does not incur a charge that is specifically linked to that call. Taking all of the allegations in the complaint as true, plaintiffs have successfully alleged that Leading Edge violated the TCPA by using automated dialing equipment to call their cell phones. Leading Edge's motion to dismiss for failure to state a claim will be denied.

## CONCLUSION AND ORDER

For the foregoing reasons, Leading Edge's and Capital One's motions to dismiss [#38, 57] are denied. Defendants are directed to answer the second amended complaint by August 24, 2012.

Dated: Aug. 10, 2012                    Enter: _____

                                                JOAN HUMPHREY LEFKOW
                                                United States District Judge