**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS MARTIN and DAVID MACK on behalf of themselves and others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) | Case No.: 1:11-CV-5886 |
| v. | ) ) | Judge: Lefkow |
| | ) | Magistrate Judge Kim |
| LEADING EDGE RECOVERY SOLUTIONS, LLC, and CAPITAL ONE BANK (USA) N.A., Defendants. | ) ) ) ) | JURY DEMANDED |
| Defendant. | ) ) | |

**SECOND AMENDED COMPLAINT CLASS ACTION**

Defendant Leading Edge Recovery Solutions, LLC, by and through its attorney James C.

Vlahakis Hinshaw & Culbertson LLP, and submits the following as its Answer and Affirmative

Defenses to Second Amended Complaint:

1.      The Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") prohibits using telephone equipment that has the "capacity to dial without human intervention" and "artificial or prerecorded voice" to call cellular telephones in attempts to collect debts, unless "the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, GC Doc. 02-278, 23 FCC Rcd. 559, 565 paragraph 10 (January 4, 2008).

**ANSWER:**      Defendant admits that Plaintiffs have quoted portions of the FCC's

January 4, 2008 Ruling, but denies that the quotation and cited paragraphs are accurate.

Defendant denies that Plaintiffs have accurately set forth what constitutes a violation of the

TCPA and further Defendant denies that it has violated the TCPA.

2.      Defendants called plaintiffs' cellular telephones using such equipment, even though defendants knew, or should have known, that neither of plaintiffs' cellular telephone numbers were provided to either defendant by the called party in connection with the debt being collected.

**ANSWER:** Defendant admits that Plaintiffs have quoted portions of the FCC's January 4, 2008 Ruling, but denies that the quotation and citations are accurate. Defendant denies that Plaintiffs have accurately set forth what constitutes a violation of the TCPA. As phrased, these allegations are vague and confusing. Subject to and without waiving these objections, denies calling plaintiffs' cellular telephones using "such equipment" as ill-defined above, but admits that Plaintiffs did not directly provide their purported cell phone numbers to Defendant. Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations.

## JURISDICTION AND VENUE

3.      The Court has federal question jurisdiction over the FDCPA and TCPA claims. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005). If *Brill* were to be abrogated or overruled, there is supplemental jurisdiction over the TCPA claims. There is also CAFA jurisdiction because at least one class member is a citizen of a state different than that of defendant, and the amount in controversy exceeds $5,000,000.

**ANSWER:** Defendant admits that the Court has federal question jurisdiction over the TCPA claims but denies the remaining allegations.

4.      Venue is proper because a substantial portion of the events complained of occurred in this District.

**ANSWER:** Admitted.

## PARTIES

5.      Plaintiffs are individuals who reside separately, each in this District. Plaintiff Martin's cellular telephone number is 630-xxx-3271. Plaintiff Mack's cellular telephone number is 773-xxx-9181.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny these allegations but admits that Plaintiffs allege that they "are individuals who reside separately, each in this District." Defendant also admits that Plaintiffs allege that "Plaintiff Martin's cellular

130272514v1  0927670

telephone number is 630-xxx-3271. Plaintiff Mack's cellular telephone number is 773-xxx-9181."

6.  Leading Edge is a debt collection agency located in Chicago, Illinois.

**ANSWER:**  Admitted.

7.  Cap One is a national bank that issues credit cards. It is located in Virginia and does business in this District.

**ANSWER:**  Defendant admits that Capital One is a national bank that issues credit cards and that it does business in this district. Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations

### FACTS

8.  The TCPA prohibits the use of any "automatic telephone dialing systems" to call cellular telephones. It also prohibits the use of any artificial or prerecorded voice in such calls.

**ANSWER:**  Defendant denies that Plaintiffs have accurately paraphrased the TCPA and the scope of its alleged prohibits.

9.  "Automatic telephone dialing system" means any equipment that has the "*capacity* to dial numbers without human intervention." *Griffith v. Consumer Portfolio Serv., Inc.*, 2011 WL 3609012 (N.D.Ill. Aug. 16, 2011)(emphasis original).

**ANSWER:**  Denied.

10.  Leading Edge used dialing equipment, along with Aspect Software, to dial telephone calls in 2010. <u>Exhibit A</u>. Upon information and belief, Cap One and/or its affiliates use similar dialing technology and equipment to make millions of debt collection calls as part of dialing campaigns during 2010.

**ANSWER:**  Objection, the term "dialing equipment" is undefined. Subject to and without waiving this objection, Defendant admits that it did call telephone numbers in 2010, and that it used Aspect Software, but denies that these actions constitute violations of the TCPA. Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations related to Capital One.

3

11.     The dialing equipment Leading Edge used in 2010 had the capacity to dial numbers as part of a dialing campaign, where an employee loaded a batch of telephone numbers into the system, and the system automatically dialed the numbers.

**ANSWER:**     Objection, the terms "dialing equipment" and "capacity to dial numbers as part of a dialing campaign" are undefined.  Subject to and without waiving this objection, Defendant admits that it caused certain numbers to be called after those number were loaded into its telephony system and admits that the system dialed the numbers.  Defendant denies that this paragraph accurately identifies its telephony systems and the manner in which Defendant contacts debtors.

12.     Similarly, upon information and belief, the dialing equipment Cap One (or its affiliates) used in 2010 had the capacity to dial numbers as part of a dialing campaign, where an employee loaded a batch of telephone numbers into the system, and the system automatically dialed the numbers.  Upon information and belief, Cap One used an Avaya dialer with Aspect software, too.

**ANSWER:**     Defendant lacks knowledge or information sufficient to admit or deny these allegations which are related to Capital One.

13.     Leading Edge used the same dialing equipment that it used to do dialing campaigns, along with its Aspect Software, to dial plaintiff Martin's cell phone number in September 2010.

**ANSWER:**     Objection, the phrases "dialing equipment" and "used to do dialing campaigns, along with its Aspect Software" are vague and  undefined.  Further objecting, Plaintiff has not provided any evidence to suggest that his is the subscriber to his purported cell phone number.  Subject to and without waiving these objections, this paragraph is denied.

14.     Nicholas Martin did not give the phone number 630-xxx-3271 to Leading Edge or Cap One, in connection with any account Leading Edge was collecting when it called that number in September 2010.

**ANSWER:**     Defendant admits that Nicholas Martin did not directly give the phone number 630-xxx-3271 to Leading Edge.  Defendant lacks knowledge or information sufficient to admit or deny these allegations which are related to Capital One.

4

15.     Leading Edge used the same dialing equipment that it used to do dialing campaigns, along with its Aspect Software, to dial plaintiff Mack's cell phone number in 2010.

**ANSWER:**     Objection, the phrases "dialing equipment" and "used to do dialing campaigns, along with its Aspect Software" are vague and undefined. Further objecting, Plaintiff has not provided any evidence to suggest that his is the subscriber to his purported cell phone number. Subject to and without waiving these objections, this paragraph is denied.

16.     David Mack did not give the phone number 773-xxx-9181 to Leading Edge or Cap One, in connection with the account Leading Edge was collecting when it called that number in September 2010.

**ANSWER:**     Defendant admits that David Mack did not directly give the phone number 773-xxx-9181 to Leading Edge. Defendant lacks knowledge or information sufficient to admit or deny these allegations which are related to Capital One.

17.     Upon information and belief, there were more autodialed calls from Leading Edge to plaintiff Mack and/or Martin's cell phones, in addition to those in September 2010. These additional calls may be associated with other accounts Leading Edge was collecting.

**ANSWER:**     Objection, the phrase "autodialed calls" is vague and undefined. Further objecting, this paragraph violates FRCP 8(a). Subject to and without waiving these objection, these allegations are denied.

18.     Cap One provided plaintiffs' cell phone numbers 630-xxx-3271 and 773-xxx-9181 to Leading Edge, as part of the account it asked Leading Edge to collect.

**ANSWER:**     Admitted. Defendant, however, denies that David Mack is the subscriber to telephone number 773-xxx-9181. Defendant lacks knowledge or information sufficient to admit or deny whether Nicholas Marin is the subscriber to telephone number 630-xxx-3271.

19.     Upon information and belief, Cap One or its affiliate called 630-xxx-3271 and/or 773-xxx-9181, in connection with the collection of debts, at some point between 2007 and 2011.

**ANSWER:**     Defendant lacks knowledge or information sufficient to admit or deny these allegations which are related to Capital One.

130272514v1  0927670

20.     Upon information and belief, some or all of Cap One's calls to 630-xxx-3271 and/or 773-xxx-9181 were made using predictive dialing equipment.  Further, upon information and belief, some such calls used a prerecorded or artificial voice, too.

**ANSWER:**     Defendant lacks knowledge or information sufficient to admit or deny these allegations which are related to Capital One.

21.     Plaintiffs and the class were substantially damaged by defendants' calls.  Their privacy was improperly invaded, they were annoyed and were forced to use airtime in their cell phone plans and forced to tend to the unwanted calls.

**ANSWER:**     Denied.

## COUNT I - TCPA

22.     Plaintiffs incorporate all previous paragraphs of this complaint.  This Count is against all defendants.

**ANSWER:**     Defendants incorporate all prior answers and objections of this Second Amended Complaint.

23.     It is a violation of the TCPA, 47 U.S.C. §227(b) to call a person's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice message.

**ANSWER:**     Admitted.  Defendant, however, denies violating the TCPA.

24.     Leading Edge made the calls that are the subject of this lawsuit in attempts to collect alleged Capital One debts.  The calls were made on behalf of Capital One.

**ANSWER:**     Defendant admits that made the calls to Plaintiffs' purported cell phone numbers in attempts to collect a debt owed by Julie Mack-Schultz to Capital One.  Defendant objects to the undefined phrase "on behalf of."  Defendant denies the remaining allegations and denies that the FCC's January 4, 2008 Declaratory Ruling is valid.

25.     Plaintiffs and the class are entitled to have their rights, status and legal relations under the TCPA relating to defendants' calling of their cell phones using an automatic telephone dialing system and using an artificial or prerecorded voice.

**ANSWER:**     Objection, this paragraph is confusing and appears to be incomplete.  Because this paragraph is in artfully pled, it is denied.

130272514v1 0927670

26.     The defendants' calls were negligent, or alternatively, they were willful.

**ANSWER:**     Objection, the term "calls" is vague and undefined.  Subject to and without waiving this objection, Defendant denies violating the TCPA and denies these allegations.

<u>**Class Allegations**</u>

27.     Plaintiffs brings Count I on behalf of a class, which consists of:

All persons with Illinois telephone numbers who either defendant called in an attempt to collect an alleged Capital One debt, on their cell phone, using equipment that has the capacity to dial numbers without human intervention and/or using an artificial or prerecorded voice, where defendants' records do not show that the phone number called was provided by the called party in connection with the alleged debt that was being collected, where any such call was made on or after August 25, 2007.

**ANSWER:**     Defendant admits that Plaintiffs purport to bring the above defined class but deny that it violated the TCPA and denies that certification is proper.

28.     Upon information and belief, based upon industry practices, defendant Leading Edge called more than 5,000 Illinois, Indiana and Wisconsin cell phone numbers during 2010, with respect to alleged Cap One accounts, where neither Leading Edge nor Cap One obtained the cell phone number through the called party voluntarily providing such in connection with the debt being collected.

**ANSWER:**     Objection, this allegation is an improper method of obtaining class based discovery.  Further objecting, Defendant objects to this allegation as being burdensome as it requires Defendant to conduct an account-by-account review of collection and creditor records. Such class-based discovery is premature prior to determining whether Plaintiffs have standing to assert their claims.  Additionally, this request is simply overly burdensome given the fact Plaintiffs have not taken any steps to prove that they were called via prohibited dialing systems and Plaintiff Mack does not appear to be the subscriber of the telephone number in question. Subject to and without waiving these objections, Defendant lacks knowledge or information sufficient to admit or deny these allegations.

130272514v1  0927670

29.    Upon information and belief, based upon industry practices, defendant Cap One called more than 5,000 Illinois, Indiana and Wisconsin cell phone numbers during 2010, with respect to alleged Cap One accounts, where Cap One did not obtain the cell phone number through the called party voluntarily providing such in connection with the debt being collected.

**ANSWER:**    Defendant lacks knowledge or information sufficient to admit or deny

these allegations which are related to Capital One.

30.    Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting any individual member of the class, including plaintiffs.  Such questions common to the Class include, but are not limited to:

    a.    Whether defendants used automatic telephone dialing systems as that term is defined in the TCPA and applicable FCC regulations and orders;

    b.    Whether defendants used an "artificial or prerecorded voice" as those terms are defined in the TCPA and applicable FCC regulations and orders;

    c.    Whether obtaining a cellular telephone number from a source other than voluntarily from the called party in connection with the alleged debt being collected constitutes "prior express consent";

    d.    Damages, including whether the violations were willful.

**ANSWER:**    Denied.

31.    Plaintiffs will fairly and adequately protect the interests of the class.  Plaintiffs have no interests that might conflict with the interests of the class.  Plaintiffs are interested in pursuing their claims vigorously, and have retained counsel competent and experienced in class and complex litigation.

**ANSWER:**    Denied.

32.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

**ANSWER:**    Denied.

33.    No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

**ANSWER:**    Denied.

130272514v1  0927670

34.     Defendant has acted on grounds generally applicable to the class, thereby making relief appropriate with respect to the class as a whole. Prosecution of separate actions by individual members of the class, should they realize their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct.

**ANSWER:**     Denied.

35.     The identity of the class is likely readily identifiable from defendant's records, or its client's records.

**ANSWER:**     Denied.

36.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

**ANSWER:**     Denied.

Respectfully submitted,

By: s/*James C. Vlahakis*
        James  C.  Vlahakis,  counsel  for
        Defendant  Leading  Edge  Recovery
        Solutions, LLC

James C. Vlahakis
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3715
jvlahakis@hinshawlaw.com

9

## AFFIRMATIVE DEFENSES

LEADING EDGE RECOVERY SOLUTIONS, LLC asserts the separate and affirmative defenses set forth below. By designating these defenses as separate and affirmative defenses, LEADING EDGE RECOVERY SOLUTIONS, LLC does not concede that it bears the burden of proof with respect to any of them.

### First Affirmative Defense  - Consent

1.      LEADING EDGE RECOVERY SOLUTIONS, LLC cannot be liable under the TCPA where plaintiffs or any member of the putative class consented to receive auto-dialed calls or prerecorded messages on their cell phones by providing their cell phone numbers to Defendant Capital One or LEADING EDGE RECOVERY SOLUTIONS, LLC or otherwise consenting to so-called auto-dialed calls and prerecorded messages.

2.      Additionally, LEADING EDGE RECOVERY SOLUTIONS, LLC asserts that certain card holder agreements will demonstrate that customers of Capital One expressly agreed to receive so-called autodialed calls or prerecorded messages on their cell phones.

### Second Affirmative Defense  - FCC's 2008 Order as to Burden of Consent

1.      It was improper for the FCC to shift the burden of consent onto debt collectors.

2.      The FCC's improper burden shifting approach is unconstitutional,  violates due process and is otherwise improper.

### Third Affirmative Defense  - the TCPA Should Not Apply to Debt Collectors

1.      The TCPA was enacted into law on December 20, 1991 (Telephone Consumer Protection Act of 1991, Pub L. No. 102-243, 105 Stat. 2394 (1991)), and is codified at **47 U.S.C. § 227**.

2.      The express Congressional intent in passing the TCPA was to "protect the privacy interests of residential telephone subscribers" by placing certain restrictions on the use of unsolicited, automated phone calls made by telemarketers who were "blasting" out advertising

130272514v1  0927670

by the use of both "facsimile machines and automatic dialers." (See, e.g. Senate Report No. 102-178, October 8, 1991, 1991 U.S.C.C.A.N. 1968**.)**

3.      The Legislative history shows that in enacting the TCPA, the Legislation was adopted as a response to the "increasing number of consumer complaints" regarding "telemarketing calls and communications." *Id.* at 1969.

4.      It was unconstitutional for the FCC to expand the TCPA to cover debt collection calls.

### Fourth Affirmative Defense – TCPA Damages Violate Due Process Clause

1.      The TCPA allows a person to recover actual damages resulting from a violation of the statute or to receive $500.00 per violation, whichever is greater. The TCPA also provides for the trebling of damages if the violation was willful.

2.      If for the sake of argument, a TCPA class was certified, Defendant's liability to the classes potentially could be so great as to result in its insolvency.

3.      The TCPA potentially imposes amalgamated damages against debt collectors in a way not permitted under other statutory schemes designed to regulate collections.  See, e.g. FDCPA, 15 USC 1692k(a)(2)(B) (capping statutory class action damages at $500,000 or 1% of the collector's net worth).

4.      The due process clause of the Fifth Amendment to the United States Constitution prohibits an award of damages that would result in Defendant's insolvency, especially where, as here, the conduct that allegedly violated the TCPA did not cause actual injury or damages to the Plaintiffs or putative class members.  *See Murray v. GMAC,* 434 F.3d 948 (7th Cir. 2006) *citing, State Farm Mut. Auto Ins. Co. v. Campbell,* 538 U.S. 408 (2003).

5.      The liability that Defendant stands to possibly incur pursuant to the damages claimed by Plaintiff on behalf of the putative classes that it desires to represent is grossly

130272514v1  0927670

disproportionate to the actual harm suffered by any individual putative class member, if any, such that the due process clause of the Fifth Amendment to the United States Constitution is violated.

## Fifth Affirmative Defense – Statute of Limitations

1.      Putative class members' alleged claims are barred by Illinois two year statute of limitation if any calls took place two years prior to the filing of this putative class action.

## Sixth Affirmative Defense – Set Off

1.      To the extent any alleged claims by Plaintiffs or members of the putative class are subject to the doctrine of setoff or recoupment, the amounts owed on the underlying debt should be setoff against their alleged damages.

## Seventh Affirmative Defense – Article III Standing

1.      Plaintiff lacks Article III standing with regard to his TCPA claims because he has failed to assert any actual damages.

2.      Putative class members lack standing if they did not incur any actual damages.

## Eighth Affirmative Defense – Subscribers

1.      Only the subscribers to a particular cell phone number are entitled to state a claim under the TCPA.

2.      To the extent that Plaintiffs and/or putative class members are not subscribers for the purported cell phone numbers, they lack standing to assert a TCPA claim.

## Ninth Affirmative Defense – First Amendment

1.      The TCPA violates the First Amendment's Free Speech Clause to the extent that it allows debt collectors to contact debtors at their residences/wirelines with so-called autodialers but prohibits debt collectors from contacting debtors on their cell phone/wireless numbers with so-called autodialers.

130272514v1  0927670

2.     The above distinction between residences/wirelines and  cell phone/wireless numbers fails to satisfy the rational basis test.

### Tenth Affirmative Defense – Primary Jurisdiction

1.     Defendant requests that this Court stay this action pursuant to the doctrine of primary jurisdiction to allow the FCC to determine whether it correctly concluded that a so-called predictive dialer is an "automatic telephone dialing system."  *See Charvat v. Echostar Satellite, LLC*, ___ F.3d ___, 2010 WL 5392875 (6th Cir. 2010).

2.     The primary jurisdiction doctrine "is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." *See Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 780 (9th Cir. 2002).

3.     Considerations of uniformity, discretion and expertise all militate in favor of primary jurisdiction since only the FCC can disambiguate the phrase "on behalf of." *Id.* at *7 (citing *In re StarNet, Inc.*, 355 F.3d 634, 639 (7th Cir. 2004))

4.     The district court in the case of United States of American, et al, vs. Dish Network LLC, 09-cv-3073 (C.D. Ill. Feb. 4, 2012) recently stayed proceedings in a TCPA case on the basis of primary jurisdiction.

### Eleventh Affirmative Defense –The FCC Should Find that it Incorrectly Concluded that a Predictive Dialer is  an Automatic Telephone Dialing System

1.     The FCC's 2008 Declaratory Ruling which provides that a predictive dialer is an "automatic telephone dialing system" ("ATDS") conflicts with the plain language of the TCPA and the intent of Congress.  The FCC's authority to interpret the TCPA is limited by the plain language of the statute.

13

2.     Further, the legislative history does not demonstrate that all predictive dialers meet the definition of an automatic telephone dialing system and public policy weighs against such a holding.

3.     The TCPA defines the term ATDS as "equipment which has the capacity-- (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." Citing this language, the FCC has held that "equipment need only have the 'capacity to store or produce telephone numbers'" to constitute an ATDS and that predictive dialers fall within the definition of ATDS because, "when paired with certain software," they have this capacity. The FCC's holding is flawed for at least two reasons. First, the FCC applied the incorrect standard when it stated that "the equipment need only have the capacity to store or produce telephone numbers." The applicable standard is not only the capacity "to store or produce telephone numbers," it is the capacity "to store or produce telephone numbers...*using a random or sequential number generator*." (emphasis supplied).

4.     To properly qualify as an ATDS, equipment must either have the capacity to: (a) store telephone numbers to be called using a random or sequential number generator; or (b) produce telephone numbers to be called using a random or sequential number generator. If the equipment does not have either of these capabilities, it cannot meet the statutory definition of ATDS. The equipment must also have the capacity to dial the randomly or sequentially generated telephone numbers.

5.     Second, the FCC incorrectly applied the standard in its analysis of predictive dialing equipment. In the 2003 Report, the FCC discussed the use of predictive dialers and acknowledged that "in most cases, telemarketers program the numbers to be called into the equipment" and that "[t]he principal feature of predictive dialing software is a timing function, not number storage or generation." The FCC, however, focused on the equipment's capacity, "*when paired with certain*

14

(none)

*software*," to store or produce numbers and to dial those numbers when holding that "a predictive dialer constitutes an [ATDS]." To the extent that the equipment is paired with such software *at the time a call is made*, this inquiry is logical and relevant to the determination of whether the equipment constitutes an ATDS. The FCC, however, appears to insinuate that a predictive dialer is an ATDS because it could *potentially* be paired with software that gives it the capability to randomly or sequentially generate telephone numbers, regardless of the equipment's capacity at the time the call is made. Under this interpretation, *virtually any* modern telephone, including one used to "manually dial" numbers, constitutes an ATDS because it could conceivably be connected to additional equipment and/or software that provides the capability to randomly or sequentially generate numbers. This interpretation leads to an absurd result and is clearly contrary to the intent of both Congress and the Commission. The relevant inquiry, therefore, *must* focus on the capacity of the equipment at the *time the call is made*.

6.　　Although the FCC has been given authority to adopt and enforce regulations implementing the TCPA, this authority is not unlimited. Congress directly spoke to the issue of what constitutes an ATDS because the statute expressly defines the term. The plain language of the TCPA dictates that equipment which *does not* have the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, does not fall within the definition of ATDS. The Commission's overly broad holding that a predictive dialer unequivocally constitutes an ATDS, regardless of its capacity to randomly or sequentially generate numbers, is, therefore, contrary to the statute and invalid.

　　WHEREFORE, Defendant LEADING EDGE RECOVERY SOLUTIONS, LLC respectfully requests that this Court enter judgment in its favor and any other relief the Court deems proper.

　　**Defendant demands a jury trial.**

130272514v1 0927670

| Date: August 24, 2012 | Respectfully submitted, counsel for Defendant LEADING EDGE RECOVERY SOLUTIONS, LLC<br><br><br>/s/*James C. Vlahakis*<br>James C. Vlahakis<br>222 N. LaSalle, Suite 300<br>Chicago, IL 60601<br>312-704-3000<br>jvlahakis@hinshawlaw.com |
|---|---|

130272514v1  0927670

**CERTIFICATE OF SERVICE**

I hereby certify that on  August 24, 2012, I electronically filed the above Answer  with the Clerk of the Court using the CM/ECF system, which will send notification of such filing(s) to all counsel of record.

<u>/s/ James C. Vlahakis</u>
James C. Vlahakis
Hinshaw & Culbertson LLP
Attorney for Defendant
222 North LaSalle, Suite 300
Chicago, IL 60601
tel 312-704-3715

130272514v1  0927670